ASHLEY D. POSNER (California Bar No.: 106195)
Email: ashleyposner@gmail.com
**POSNER LAW CORPORATION**
15303 Ventura Boulevard, Suite 900
Sherman Oaks, California 91403
Telephone No. (310) 475-8520
Facsimile No. (818) 986-2203

**HILLYER LEGAL, PLLC**
Gregory L. Hillyer (*Pro Hac Vice*)
E-mail: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone No. (202) 686-2884
Facsimile No. (202) 686-2877

*Attorneys for Plaintiff,*
TRINITY INFO MEDIA, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINITY INFO MEDIA, LLC f/k/a TRINITY INTEL MEDIA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HORNET NETWORKS, INC., and HORNET NETWORKS LIMITED, <br><br> Defendants. | CASE NO.: 2:21-cv-01351-JAK <br><br> AMENDED COMPLAINT FOR <br><br> PATENT INFRINGEMENT <br> (35 U.S.C. § 271) |

Plaintiff Trinity Info Media, LLC f/k/a Trinity Intel Media, LLC, for its Amended Complaint against Defendants Hornet Networks, Inc. and Hornet Networks Limited, alleges as follows:

## INTRODUCTION

1. This is a case for patent infringement.

## JURISDICTION AND VENUE

2. The cause of action in this Complaint arises under the Patent Act, 35 U.S.C. § 101 *et seq*.

3. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Venue is proper in this Court pursuant 28 U.S.C. § 1391 since Hornet Networks, Inc. is headquartered in this district, and this entity, with Hornet Networks Limited, either alone and/or collectively, are engaged in infringing activities which are causing harm within this district through the use, making, offering for sale or selling of infringing products and services to consumers in this district and throughout California.

## THE PARTIES

5. Plaintiff Trinity Info Media, LLC, formerly known as Trinity Intel Media, LLC (collectively, "Trinity"), is a limited liability company organized under the laws of Delaware, with its principal place of business at 756 Robinwood Drive, Pittsburgh, PA 15220.

6. Upon information and belief, Defendant Hornet Networks, Inc. is a Delaware Corporation, based in California, doing business in this state and having a corporate address of 750 North San Vincente Blvd Suite 800w, Los Angeles, CA 90069. Upon information and belief, Hornet Networks, Inc. is a wholly owned subsidiary of Defendant Hornet Networks Limited.

7. Upon information and belief, Defendant Hornet Networks Limited (a/k/a Hornet Networks Ltd) is a Hong Kong limited company located in Hong Kong, China, having an address of Office A, 10/F Tung Lee, Commercial Building 91-97, Jervois Street, Sheung Wan, Hong Kong. Defendants Hornet Networks Limited and Hornet Networks, Inc. are referred to collectively herein as "Hornet."

///

## GENERAL ALLEGATIONS

### Trinity and its Poll-Based Networking

8. Trinity is in the business of creating, launching and operating social online experiences with a focus on poll-based networking.

9. Trinity operates "pollpals" which allows users to engage in unique online polling on the interactive website, www.pollpals.com.

10. Through this website, users can respond to poll questions created by other users or create their own polls. The polls span a wide range of topics, including history, sports, technology, politics and popular culture to name a few.

11. Depending on the unique answers to particular questions, users can learn the similarity of other user's responses, how many other users participated, the inspiration behind a certain poll and other metrics that enhance the overall experience.

12. Users of pollpals can also leave comments, start a discussion, make recommendations, generate likes and participate in other social networking activities.

### Trinity's Patent Rights

### The '321 Patent

13. On July 21, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,087,321 ("the '321 Patent"), entitled "Poll-Based Networking System."

14. A true and correct copy of the '321 Patent is attached as Exhibit 1.

15. Trinity is the sole owner of right and title to the '321 Patent.

16. The '321 Patent is presumed valid under 35 U.S.C. § 282.

17. The '321 Patent is directed, in part, to poll-based networking systems, methods and computer program products. These systems, methods and products may be employed to produce an on-line network of people (*i.e.*, friends) who are determined through polling each user and identifying other users based on matching the responses.

18. For example, after a user creates an initial profile, the system may poll the user with a first question. After the user provides an answer, the system may compare

1  it to the answers of other users, identify users who answered similarly (*i.e.*, a match)
2  and share the matched users. The user may progressively answer additional questions,
3  and the system may progressively update the matches and present the other users.

4      19.    Claim 1 of the '321 Patent is directed to a poll-based networking system,
5  comprising: a data processing system having one or more processors and a memory,
6  the memory being specifically encoded with instructions such that when executed, the
7  instructions cause the one or more processors to perform operations of: (a) receiving
8  user information from a user to generate a unique user profile for the user; (b) providing
9  the user a first polling question, the first polling question having a finite set of answers
10 and a unique identification; (c) receiving and storing a selected answer for the first
11 polling question; (d) comparing the selected answer against the selected answers of
12 other users, based on the unique identification, to generate a likelihood of match
13 between the user and each of the other users; and (e) displaying to the user the user
14 profiles of other users that have a likelihood of match within a predetermined threshold.

### The '685 Patent

16     20.    On March 2, 2021, the United States Patent and Trademark Office duly
17 and legally issued U.S. Patent No. 10,936,685 ("the '685 Patent"), entitled "Poll-Based
18 Networking System."

19     21.    A true and correct copy of the '685 Patent is attached as Exhibit 2.
20     22.    Trinity is the sole owner of right and title to the '685 Patent.
21     23.    The '685 Patent is presumed valid under 35 U.S.C. § 282.
22     24.    The '685 Patent is directed, in part, to poll-based networking systems,
23 methods and computer program products involving a hand-held device. These systems,
24 methods and products may be employed to produce an on-line network of people who
25 are determined through polling each user and identifying other users based on matching
26 the responses and then displaying results which are reviewable by swiping.

27     25.    Claim 2 of the '685 Patent is directed to a computer-implemented method
28 for creating a poll-based network, the method comprising an act of causing one or more

processors having an associated memory specifically encoded with computer executable instruction means to execute the instruction means to cause the one or more processors to collectively perform operations of: (a) receiving user information from a user to generate a unique user profile for the user; (b) providing the user one or more polling questions, the one or more polling questions having a finite set of answers and a unique identification; (c) receiving and storing a selected answer for the one or more polling questions; (d) comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other users; (e) causing to be displayed to the user other users, that have a likelihood of match within a predetermined threshold; (f) wherein one or more of the operations are carried out on a hand-held device; and (g) wherein two or more results based on the likelihood of match are displayed in a list reviewable by swiping from one result to another.

**Advances And Benefits Of The Inventions In The '321 And '685 Patents**

26. The inventions described and claimed in the '321 and '685 Patents represent significant advances over the prior art, improve the functionality of general-purpose computers and offer other advantages and benefits during matching operations.

27. Prior to the invention, a plethora of social networking websites shared common characteristics that merely allowed users to engage in activities over the internet using traditional computers, *i.e.*, desktop or laptop. Some of these internet-based computer networking websites allowed users to create profiles and find friends. To find friends, however, users were required to complete entire fields as part of their profiles which permitted a search of a user database where other profiles were stored.

28. While traditional websites may have queried the user for the purpose of classifying him/her in predefined categories with a similar group of people, such sites did not provide a progressive poll query that, in real-time, matched the user with other users based on each of the polls taken. A poll-based networking system employing logic that is operable for matching a user, in real-time, with other users based on all of

the polls taken by the user and other users represents a significant advance over the art.

29. One or more processors may be configured to perform the operations of: collecting the selected answers with a web server and storing the selected answers in a database; upon receipt of a selected answer, separately transmitting the selected answer from the web server, through a match aggregator, to a plurality of match servers, each match server being assigned a distinct subset of the other users, such that each match server compares the selected answer of the user against the selected answers of the users in its distinct subset to generate a likelihood of match between the user and each of the users in its distinct subset; receiving in the match aggregator, from each match server, a likelihood of match between the user and the users in the distinct subset; compiling the likelihood of matches from the plurality of match servers to generate the likelihood of match between the user and each of the other users; and transmitting the likelihood of match between the user and each of the other users.

30. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer in the form of carrying out one or more operations described in the patents on a handheld device. The handheld device may be a personal device, such as a mobile phone.

31. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer by enabling a user to review the matches with other users through the act of swiping. For example, two or more results may be displayed in a list reviewable by swiping from one result to another.

32. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer in the form of a computer-program product that is operable on a mobile phone, such as an application ("app") which carries out one or more of the operations described in the patents.

33. In sum, before the invention, the prior art did not include, alone or in any combination: (1) a progressive poll that matches a user with other users in real time; (2) employing multiple match servers and a match aggregator; (3) carrying out one or

more matching operations on a mobile phone; (4) displaying matches or potential matches reviewable by swiping; or (5) carrying out one or more match operations on a computer program product in the form of an application deployed on a mobile phone.

### The '113 Application

34. The patent application that led to the '321 Patent also led to other patents and applications, including U.S. Patent No. 9,230,032 and U.S. Serial No. 17/180,113 ("the '113 Application").

35. The '113 Application contains claims reciting systems and methods for causing one or more processors to perform the operations of: (a) receiving user information from a user to generate a unique user profile for the user; (b) providing the user one or more polling questions, the one or more polling questions having a finite set of answers, each answer having a unique identifier; (c) receiving and storing one or more answers in response to the one or more polling questions; (d) comparing the user's one or more answers against one or more answers of other users to the same one or more polling questions; (e) selecting one or more other users who are potential matches with the user; (f) displaying to the user the selected one or more other users who are potential matches with the user; (g) wherein one or more of the operations are carried out on a hand-held device; and (h) wherein the selected other users are reviewable by the user by swiping.

### Hornet's Infringing Product
### The '321 Patent

36. Hornet is a dating and social networking service.

37. Hornet promotes quality, curative matches based on various criteria, including age, location, appearance, lifestyle and income level.

38. Hornet makes, uses, offers to sell and/or sells the application known as Hornet ("The Hornet App").

39. The Hornet App was designed to connect profile users and offer introductory information for matches.

40. The Hornet App is promoted through the site www.hornet.com as well as various social media platforms, including Facebook, Twitter and Instagram.

41. The Hornet App can be downloaded through Google's GooglePlay or Apple's AppStore which are accessible directly, or via Hornet's website and elsewhere.

42. The Hornet App has the elements of at least claim 1 of the '321 Patent.

43. By virtue of the deployment of the Hornet App to a personal device, a data processing system having one or more processors and a memory are employed by the application to perform relevant functions.

44. On information and belief, the memory is encoded with instructions such that when executed, the instructions cause the processor(s) to perform the operation of (a) receiving user information from a user to generate a unique user profile for the user.

45. Specifically, the Hornet App requires registration prior to use and therefore the user must provide specific information to generate a unique profile. This may be accomplished by providing preliminary information.

46. During registration the Hornet App receives user information from the user, *e.g.*, name, contact information, etc., which causes the generation of an account.



47. Claim 1 recites that a processor performs the operation of (b) providing the user with a first polling question having a finite set of answers and a unique identification. In this regard, the Hornet App prompts the user to participate in polling questions in the form of preferences, including the age preference of potential matches.




48. A scroll-wheel is provided for selecting the preferred age, *e.g.*, 18-23.

49. The answer corresponding to the first polling question (the desired age) is subsequently (c) received and stored by the processor.

50. The answer is then used to identify suitable matches by (d) comparing them against the selected answers of other male users (based on the unique identification) to generate a likelihood of match between the user and other users.

51. This is confirmed when (e) the profiles of one or more other users that have a likelihood of match within a predetermined threshold are displayed to the user.



52. The display of other matched users and associated profiles within the specified age group confirms that the answer to at least the first polling question (*i.e.*, the desired age of the potential match) was received, stored and compared to generate a match as evidenced by a matched other user having a similar age, *e.g.*, 18-23.

53. On information and belief, Hornet infringes additional claims of the '321 Patent, including one or more of claims 2, 3, 8 and 10.

**The '685 Patent**

54. The Hornet App has the elements of at least claim 2 of the '685 Patent.

55. On information and belief, by virtue of the deployment of the Hornet App to a personal device, one or more processors having an associated memory specifically encoded with computer executable instruction means to execute the instruction means cause the one or more processors to collectively perform operations of: (a) receiving user information from a user to generate a unique user profile for the user.

56. Specifically, the Hornet App requires registration prior to use during which the Hornet App receives user information from the user, *e.g.*, name, contact information, etc., which causes the generation of a unique profile (via an account).



57. Claim 2 recites that (b) the user is provided with one or more polling questions, the one or more polling questions having a finite set of answers and a unique identification. In this regard, the Hornet App prompts the user to participate in polling questions in the form of preferences, including the age preference of potential matches.

 

58. A scroll-wheel is provided for selecting the preferred age, *e.g.*, 18-23.

59. Subsequently, (c) the selected answer corresponding to the first polling question (the desired age) is received and stored.

60. The answers are then used to identify suitable matches by (d) comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other users and (e) causing to be displayed to the user, other users, that have a likelihood of match within a predetermined threshold.



61. The display of other matched users and associated profiles within the specified age group confirms that the answer to at least the first polling question (*i.e.*, the desired age of the potential match) was received, stored and compared to generate a match as evidenced by a matched other user having a similar age, *e.g.*, 18-23.

62. As shown above, one or more of the operations of Hornet App may be (f) carried out on a hand-held device (*e.g.*, a mobile phone).

63. Finally, (g) two or more of the results based on the likelihood of match are displayed in a list that is reviewable by swiping from one result to another (*e.g.*, running a thumb or finger across the screen of the phone). Specifically, multiple matches initially appear in a scrollable list which further allows any particular selection to be enlarged and swiped (*e.g.*, from side to side) to reveal another result.



64. The Hornet App is a computer program product (*e.g.*, an application or "app" for a mobile phone) as recited in claim 3 of the '685 Patent.

65. On information and belief, Hornet infringes additional claims of the '685 Patent, including one or more of claims 12, 16, 20, 22 and 24.

/ / /

/ / /

# COUNT I

### Patent Infringement Of The '321 Patent Under 35 U.S.C. § 271

66. Trinity repeats and realleges the allegations in paragraphs 1 to 65 above as if fully set forth herein.

67. Hornet has directly infringed, is directly infringing and will continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '321 Patent under 35 U.S.C § 271(a) by making, using, selling, and/or offering for sale the Hornet App.

68. Hornet has infringed, is infringing, and will continue to infringe, literally and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the '321 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Hornet App.

69. Hornet has infringed, is infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the '321 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Hornet App.

70. Hornet's acts of patent infringement are willful.

71. Trinity has no adequate remedy at law.

72. Hornet's patent infringement is causing irreparable injury to Trinity and, unless enjoined, will continue to cause irreparable injury.

73. As a result of Hornet's intentional and willful infringement, Trinity is entitled to an injunction and damages in a sum to be determined.

# COUNT II

### Patent Infringement Of The '685 Patent Under 35 U.S.C. § 271

74. Trinity repeats and realleges the allegations in paragraphs 1 to 65 above as if fully set forth herein.

75. Hornet has directly infringed, is directly infringing and will continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of

the '685 Patent under 35 U.S.C § 271(a) by making, using, selling, and/or offering for sale the Hornet App.

76. Hornet has infringed, is infringing, and will continue to infringe, literally and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the '685 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Hornet App.

77. Hornet has infringed, is infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the '685 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Hornet App.

78. Hornet's acts of patent infringement are willful.

79. Trinity has no adequate remedy at law.

80. Hornet's patent infringement is causing irreparable injury to Trinity and, unless enjoined, will continue to cause irreparable injury.

81. As a result of Hornet's intentional and willful infringement, Trinity is entitled to an injunction and damages in a sum to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Trinity demands judgment in its favor on its Amended Complaint and requests the following relief:

1. Enter a judgment that Hornet has infringed and/or is infringing one or more claims of the '321 and '685 Patents under 35 U.S.C. § 271;

2. Permanently enjoin Hornet, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing the '321 and '685 Patents; or inducing or contributing to the infringement by others of the '321 and '685 Patents;

3. Award Trinity damages adequate to compensate for Hornet's infringing acts, at a minimum at reasonable royalty, in accordance with 35 U.S.C. § 284;

4. Increase Trinity's damages award up to three times, in view of Hornet's

willful infringement, in accordance with 35 U.S.C. § 284;

     5.    Award Trinity interest and costs pursuant to 35 U.S.C. § 284;

     6.    Declare this case exceptional under 35 U.S.C. § 285 and award Trinity its attorneys' fees, expenses and costs incurred in this action; and

     7.    Award such other relief as this Court deems just and proper.

## JURY DEMAND

Trinity hereby demands a trial by jury on all issues so triable as a matter of right.

Dated: April 29, 2021

Respectfully submitted,

By: *s/ Ashley D. Posner*

Ashley D. Posner (CA Bar # 106195)
*ashleyposner@gmail.com*
POSNER LAW CORPORATION
15303 Ventura Boulevard, Suite 900
Sherman Oaks, California 91403
Telephone No. (310) 475-8520
Facsimile No. (818) 986-2203